UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

JAMES WATSON,

      Plaintiff,
v.

GGR EAST COAST LLC.

      Defendant.
_____/

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, James Watson, ("Plaintiff"), by and through the undersigned counsel, sues Defendant, GGR East Coast, LLC, ("Defendant"), a Foreign Profit Corporation for Injunctive Relief, attorney's fees, litigation expenses and costs, under Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12181-12189 ("ADA").

1.    Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

2.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. See also 28 U.S.C. § 2201 and § 2202.

3.    Plaintiff is a resident of Miami-Dade County, Florida, is *sui juris*, and qualifies as an individual with disabilities as defined by the ADA, the ADA Amendments Act of 2008,

("AADG") 42 U.S.C. §12101, and the 28 C.F.R. §36.105(b)(2).

4. Plaintiff is legally blind, and substantially limited in performing one or more major life activities, including, but not limited to, seeing, accurately visualizing his world, and adequately traversing obstacles. As such, is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq.*, and 42 U.S.C. §3602(h).

5. Because Plaintiff's visual disability limits him in the performance of major life activities, including sight, he requires the help of appropriate and available auxiliary aids, and screen reader software technology for effective communication, including communication in connection with his mobile devises such as phones or tablet computers.

6. Plaintiff uses the internet and a mobile device to help him navigate a world of goods, products and services like the sighted. The internet, websites and mobile applications provide him with a window into the world that he would not otherwise have. He sues Defendant for offering and maintaining a mobile website (software that is intended to run on mobile devises such as phones or tablet computers) that is not fully accessible and independently usable by visually impaired consumers. Plaintiff uses the Apple Screen Reader VoiceOver software to read computer materials and/or access and comprehend internet mobile website information which is specifically designed for the visually impaired. Due to his disability, Plaintiff cannot use mobile devises such as phones or tablet computers without the help of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user.

7. The Screen reader software translates the visual internet into an auditory

equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC,* 17-CV-767, 2017 WL 6542466, at *6-7 (E.D.N.Y. Dec. 21, 2017).

8. Plaintiff is also an advocate of the rights of similarly situated disabled persons and-is a "tester" for the purpose of asserting his civil rights, and ensuring, that places of public accommodation and/or their respective and associated websites comply with the ADA and any other applicable disability laws, regulations, and ordinances.

9. Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 C.F.R. 36.201(a) and 36.104. The subject place of public accommodation  is located in Miami-Dade County.

10. This Court has personal jurisdiction over Defendant, GGR East Coast, LLC,underinter alia, Florida's long arm statute F.S. § 48.193, in that Defendant: (a) operates, conducts, engages in, and/or carries on a business or business ventures (s) in Florida and/or has an office or agency in Florida; (b) has committed one or more tortious acts within Florida;

(c) was and/or is engaged in substantial and not isolated activity within Florida; and/or (d) has purposely availed itself of Florida's laws, services and/or benefits and therefore should reasonably anticipate being hailed into one or more of the courts within the State of Florida.

11. Defendant, GGR East Coast, LLC, is a foreign for-profit Corporation, authorized and doing business in the State of Florida, which owns and/or operates stores branded "Gianvito Rossi," open to the general public. As such, a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, located within this District, at the Miami Bal Harbour Shops, 9700 Collins Ave, Suite 111, Bal Harbour, Florida 33154.

12. As the owner, operator, and/or controller of a stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns and/or operates "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

13. Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as defined by 42 U.S.C. §12181(7)(E), §12182, and 28 C.F.R. §36.104(2). Defendant also offers those items to the public through its website.

14. Defendant also controls, maintains, and/or operates an adjunct website, www.gianvitorossi.com (the "Website"). One of the functions of the mobile website is to provide public information about Defendant's public accommodation, including special sales, goods, services, accommodations, privileges, benefits and facilities available to patrons at physical locations. Defendant also sells to the public its merchandise through the mobile

website, which acts as a point of sale for merchandise available in, from, and through Defendant's physical store.

15. The website is an extension of Defendant's place of public accommodation. By and through this website, Defendant extends its public accommodation into individual persons' homes, portable devices and personal computers wherever located. The website is a service, facility, privilege, advantage, benefit and accommodation of Defendant's place of accommodation. For example, the website provides information about Defendant's store locations, hours of operation, new arrivals, sales, to shop at their online store, as well as the ability to contact the store. By this nexus, the mobile website is characterized as a service or benefit of a Place of Public Accommodation subject to Title III of the ADA[1], 42 U.S.C. § 12181(7)(B) and 28 C.F.R. § 36.104(2).

16. Defendant has subjected itself to the ADA because its mobile website is offered as a tool to promote, advertise and sell products and services at their stores. As a result, Defendant's mobile website must interact with the public, which includes Plaintiff (a visually impaired person). Therefore, Defendant's mobile website must comply with the ADA, which means it must not discriminate against individuals with disabilities and may not deny full and

---

[1] Ensuring Web Accessibility for people with disabilities has become a priority for the Department of Justice. The Department of Justice Civil Rights Division has taken the position that both State and local government websites (Title II) and the websites of private entities that are public accommodations (Title III) are covered by the ADA. On March 18, 2022, the DOJ issued guidance on Web Accessibility, see https://beta.ada.gov/resources/web-guidance/. The guidance states that individuals with disabilities should not be denied equal access to information, and inaccessible websites are as excluding as are access barriers to physical locations. DOJ guidance requires that website barriers must be identified, prevented, and removed so that all Title II and Title III entities offer websites that are accessible to people with disabilities.

equal enjoyment of the goods and services afforded to the general public[2].

17. Defendant's website provides access to benefits of Defendant's physical stores and Plaintiff was denied those benefits when he could not access Defendant's mobile website. Therefore, the website has integrated with and is a nexus to Defendant's brick and mortar location. Therefore, it is governed by the following provisions:

    a. 42 U.S.C. Section 12182(a) provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

    b. 42 U.S.C. Section 12182(b)(1)(A)(i) provides: "It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity[.]"

    c. 42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals[.]"

---

[2] According to Statista, almost half of web traffic in the United States originated form mobile devices in 2021. Therefore, Defendant knew or should have known that potential customers would be using the mobile version of its website and provided accessibility for blind users.

d.  42 U.S.C. Section 12182(b)(1)(A)(ii) provides: "It shall be discriminatory to provide an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others[.]"

e.  42 U.S.C. Section 12182(b)(1)(B) provides: "Goods, services, facilities, privileges, advantages, and accommodations shall be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual."

f.  42 U.S.C. Section 12182(b)(1)(C) provides: "Notwithstanding the existence of separate or different programs or activities provided in accordance with this section, an individual with a disability shall not be denied the opportunity to participate in such programs or activities that are not separate or different."

g.  42 U.S.C. Section 12182(b)(2)(ii) describes as discrimination: "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations[.]"

h.  42 U.S.C. Section 12182(b)(2)(iii) describes as discrimination: "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of

the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden[.]'

18.     As the owner or operator of the subject website, Defendant is required to comply with the ADA and the provisions cited above. This includes an obligation to create and maintain a website that is accessible to and usable by visually impaired persons so that they can enjoy full and equal access to the website and the content therein, including the ability to shop through the website, and contact the desired location.

19.     Since the Website is open to the public through the internet, by this nexus the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as are afforded the non-visually disabled public both online and in the physical stores. As such, Defendant has subjected itself and the Website to the requirements of the ADA.

20.     Plaintiff attempted to access and/or utilize Defendant's mobile website to test for accessibility, to browse through the merchandise and online offers to educate himself as to the merchandise, services, sales, discounts, and promotions being offered, learn about the brick and-mortar stores, check store hours, and check merchandise pricing, but was unable to, and he remains unable to enjoy full and equal access to the mobile website and/or understand the content therein because many portions of the mobile website do not interface with mobile VoiceOver screen reader software. Features of the mobile website that are inaccessible to

**Watson v. GGR East Coast**
**Complaint for Injunctive Relief**

VoiceOver screen reader software users include, but are not limited to, the following (citing the WCAG 2.1 Level A and AA Guidelines):

i. Guideline 1.3.1 – Info and Relationships is violated. The content in the Size Guide table is not labeled, so users do not hear any column labels or column numbers. All content is announced as only text and without reference to a row or column.

ii. Guideline 1.3.2 – Meaningful Sequence. A second popup with instructions is displayed when the size guide is opened. It includes instructions for navigation and other information, but this instructional popup is not announced when it's displayed, and users cannot swipe to it before it disappears so they cannot access this. SRUs will not be aware that this information is displayed.

iii. Guideline 2.4.3 – Focus Order. Mobile SRUs cannot select the 'Apple Pay' button as a payment method. After the 'Add to Cart' button is announced, then with the next swipe, focus skips the Apple Pay button and moves to the 'Check Availability in boutique' button. We tested this multiple times with the accessibility widget activated and swiped forward and backwards, but the Apple Pay button didn't show focus and wasn't announced. Users had to turn off VoiceOver to select it.

iv. Guideline 3.3.1 – Error Identification. Specific error messages are displayed to sighted users, but only generic messages are announced to SRUs. For example, after submitting the 'Contact Us' form, then the First Name field turned red, an asterisk and error message were displayed in red text beneath this field, but this was not announced to mobile SRUs. Instead, after a mobile SRU selects the Submit button, then only "fill out this field" is announced." Although there are 10 elements on the form, SRUs do not hear which one needs to be fixed.

v. Guideline 4.1.3 – Status Messages is violated. The 'Add to Wishlist' button changes color when selected and a popup is briefly displayed which reads 'Product added to wish list' but neither is announced to mobile SRUs. Instead, "unchecked" is announced, so mobile SRUs hear the opposite of what is displayed onscreen. If they double tap the Add to Wishlist button again, then it removes the item from the Wishlist.

21. Plaintiff continues to attempt to use the mobile website and/or plans to continue to attempt to use the website in the near future. In the alternative, Plaintiff intends to monitor the website in the near future, as a tester, to determine whether it has been updated to interact properly with screen reader software.

22. That Plaintiff could not communicate with or within the Website left him feeling

excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, services, discounts, and promotions, as provided at the Website and in the physical stores as the non-visually disabled public.

23. As more specifically set forth above, Defendant has violated the above provisions of the ADA by failing to interface its website with software used by visually impaired individuals. Thus, Defendant has violated the following provisions either directly or through contractual, licensing or other arrangements with respect to Plaintiff and other similarly situated individuals on the basis of their disability:

    a. by depriving him of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of its place of public accommodation (42U.S.C. § 12182(a));

    b. in the denial of the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i));

    c. in affording him the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii));

    d. by providing him a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals, unless such action is necessary to provide the individual or class of individuals with a good, service, facility, privilege, advantage, or accommodation, or other opportunity that is as effective as that provided to others (42 U.S.C. § 12182(b)(1)(A)(iii));

    e. by failing to afford him goods, services, facilities, privileges, advantages, and accommodations in the most integrated setting appropriate to the needs of the individual (42 U.S.C. § 12182(b)(1)(B));

    f. notwithstanding the existence of separate or different programs or activities provided in accordance with this section, by denying him the opportunity to participate in such programs or activities that are not separate or different. (42 U.S.C. § 12182(b)(1)(C));

    g. by a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(2)(ii)); and,

    h. by a failure to take such steps as may be necessary to ensure that they are not excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden (42 U.S.C. § 12182(b)(2)(iii)).

  24. Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to use the Website, but he is presently unable to do so as he is unable to effectively communicate with Defendant due to his blindness and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to

effectively access, navigate, and communicate with Defendant through the mobile Website due to his blindness and the Website's access barriers. Thus, Plaintiff as well as others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth here unless properly enjoined by this Court.

25. Because of the nexus between Defendant's retail stores and the Website, and the fact that the Website provides support for and is connected to Defendant's retail stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

26. Plaintiff is continuously aware of the violations at Defendant's website and knows that it would be a futile gesture to attempt to use the website as long as those violations exist unless he is willing to suffer additional discrimination.

27. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's website. By continuing to operate its website with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the public. By encountering the discriminatory conditions at Defendant's mobile website and knowing that it would be a futile gesture to attempt to use the website unless he is willing to endure additional

discrimination, Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the public and is deterred and discouraged from doing so. By maintaining a website with violations, Defendant deprives Plaintiff the equality of opportunity offered to the public.

28. Plaintiff has suffered and will continue to suffer direct and indirect injury because of the Defendant's discrimination until the Defendant is compelled to comply with the ADA.

29. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this website as described above. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to access the website to avail himself of the benefits, advantages, goods and services therein, and/or to assure himself that this website complies with the ADA so that he and others similarly situated will have full and equal enjoyment of the website without fear of discrimination.

30. The Plaintiff and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested here.

31. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant under 42 U.S.C. § 12205 and 28 CFR 36.505.

32. Under 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter its website to make it readily accessible to and usable by Plaintiff and other persons with vision impairment.

33. Because of the foregoing, Plaintiff has had to retain the undersigned counsel for

the filing and prosecution of this action. Plaintiff is entitled to have him a reasonable attorneys' fees, costs and litigation expenses paid by Defendant under 42 U.S.C. § 12205.

WHEREFORE, Plaintiff, James Watson demands judgment against Defendant, GGR East Coast, LLC, and respectfully requests the following injunctive and declaratory relief:

i. The Court issue a Declaratory Judgment that determines that the Defendant's website at the commencement of the subject lawsuit violates Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

ii. The Court issue a Declaratory Judgment that determines that the Defendant's website violates Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.;

iii. The Court issue a Declaratory Judgment that Defendant has violated the ADA by failing to monitor and maintain its website to ensure that it is readily accessible to and usable by persons with vision impairment;

iv. That this Court issue an Order directing Defendant to alter its website to make it accessible to, and useable by, individuals with disabilities to the full extent required by Title III of the ADA;

v. That this Court enter an Order directing Defendant to evaluate and neutralize its policies and procedures towards persons with disabilities for such reasonable time to allow Defendant to undertake and complete corrective procedures;

vi. That this Court enter an Order directing Defendant to continually update and maintain its website to ensure that it remains fully accessible to and usable by visually impaired individuals;

vii. An award of attorney's fees, costs and litigation expenses under 42 U.S.C. § 12205; and,

viii. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted on May 8, 2024.

By: */s/ J. Courtney Cunningham*
J. Courtney Cunningham, Esq.
FBN: 628166
J. COURTNEY CUNNINGHAM, PLLC.
8950 SW 74th Court, Suite 2201,
Miami, FL 33156
T:  305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com

*Counsel for Plaintiff*